IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALICO PRECISION MOLDING, LLC, an Indiana limited liability company, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 11-cv-7801 |
| INTEGRITY MOLD AND TOOL, INC., an Illinois corporation, | ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT**

Plaintiff Calico Precision Molding, LLC ("Calico"), by and through its attorneys, brings this action against Integrity Mold and Tool, Inc. ("IMT"), and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for breach of contract, tortious interference with prospective economic advantage, and misappropriation of trade secrets, involving the wrongful possession of a tool used to produce 70mm plastic caps (the "Tooling"). Calico seeks an injunction preventing IMT from using the Tooling solely, or in conjunction with any other manufacturer, and requiring IMT to return the Tooling to Calico. Calico also seeks damages for IMT's breach of the parties' business agreement, conversion of the Tooling, IMT's tortious interference with Calico's prospective business from the sale of the 70mm plastic caps, and IMT's misappropriation of trade secrets.

1

## PARTIES

2.  Calico Precision Molding, LLC is, and at all material times was, an Indiana limited liability company, with its principal place of business in Indiana. The members of the limited liability company reside in New Jersey, Michigan, Alabama, and Indiana. No member resides in Illinois.

3.  Defendant Integrity Mold and Tool, Inc. is, and at all material times was, incorporated in the State of Illinois, with its principal place of business in Illinois.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) because defendant IMT resides in this judicial district.

## COMMON ALLEGATIONS

6.  Plaintiff Calico began operations in Fort Wayne, Indiana in July of 2001 and offers state of the art precision injection molding, with a wide range of processing capabilities. Calico currently has 42 employees and is known for its custom molding.

7.  As a custom molder, Calico typically builds a customer-owned tool and then provides part-specific components from the tool for the customer.

8.  Calico partnered with other investors to form Polytec Packaging Solutions ("Polytec") in May of 2008. Polytec dissolved on December 31, 2010 and transferred its assets to Calico in partial satisfaction of obligations it owed to Calico.

9. Defendant IMT is in the industrial mold manufacturing market, and, in part, makes and owns tools to facilitate manufacturing processes.

10. On February 15, 2010, Polytec and IMT entered into the 70mm Cap Business Agreement (the "Agreement") which laid out the responsibilities of each party and other agreed-upon terms involving the production of 70mm plastic cap packaging products ("70mm Caps"). The Agreement is attached hereto as Exhibit A and is incorporated herein.

11. The objective of the agreement was for IMT to provide production tooling in order for Polytec to produce 70mm Caps for its given customers. (Section 2, Objective)

12. IMT was responsible for producing a "production capable mold for various 70mm Caps; for correcting shrink and tool function; initial core change outs; unscrewing core change outs; mandatory maintenance." (Section 8, Responsibilities)

13. Mandatory Maintenance was further explained in the Agreement: "every 1,000,000 parts the base mold must be maintained at IMT, Polytec should plan for 1 week for regular maintenance." (Section 8, Responsibilities)

14. Under the Agreement, Polytec was responsible for "part drawings and dimensions; sequencing of the production/molding process; hook up and verify proper function systems and safties [sic]; production, quality, inventory, customer relations and sale of parts." (Section 8, Responsibilities)

15. Section 8 also required that "any damages incurred to IMT's tooling that can be rooted to miss treatment [sic] by Polytec, Polytec will submit payment to IMT's invoice, terms NET30." (Section 8, Responsibilities)

16. In Section 9 of the Agreement, Confidentiality, IMT acknowledged that proprietary information will be communicated between Polytec and IMT and that "at no point"

3

will information deemed sensitive be communicated to any customer, specifically in relation to the mold and mold design. IMT also agreed that it would handle customer drawings as confidential.

17. In Section 9 of the Agreement, IMT agreed, if it terminated the contract at any time, it would not produce or sell any parts that involved investment money from Polytec and would not directly compete with the 70mm Caps product line for a duration of three years.

18. Calico owns an exclusive license to manufacture and sell the 70mm Caps which are patented designs ("License Agreement"). Under the License Agreement these products cannot be manufactured by any company other than Calico, unless Calico sub-licenses with that company.

19. On May 6, 2011, Calico informed IMT that Polytec had agreed to transfer all of its assets and contracts to Calico (the "Transfer Notice"). The Transfer Notice is attached hereto as Exhibit B and incorporated herein.

20. With the transfer, the Agreement between Polytec and IMT was assigned to Calico for the duration of the contract.

21. The Agreement was properly assignable to Calico pursuant to Section 3 of the Agreement which states, "should either IMT or Polytec go through a sale or transfer of ownership during the duration of this contract, the contract, all terms, conditions, and agreements will be up held by all involved parties." (Section 3, Heirs and Assigns)

22. Pursuant to the Agreement, Calico began using IMT's Tooling, in or around March of 2011.

23. On March 21, 2011 a cylinder shaft on the Tooling broke down and was repaired by IMT. Between March 1, 2011 and October 14, 2011, this cylinder broke down three times, in

a similar fashion. After each incident, Calico sent the Tooling to IMT, IMT repaired the broken cylinder, and returned the Tooling to IMT within 48 to 72 hours, pursuant to the Agreement.

24. On October 14, 2011, the Tooling broke down again as a result of a break in the same cylinder. The Tooling was already scheduled to be sent to IMT on this same day for Mandatory Maintenance under the Agreement. The Tooling was then sent to IMT for repair and Mandatory Maintenance.

25. On October 23, 2011, IMT sent Calico an email indicating it wanted to discuss "commercial issues" with the regard to the Tooling. IMT stated it wanted an invoice for $5,815 paid before it would return the Tooling to Calico. IMT believed that the Tooling had been broken by Calico. In this correspondence, IMT also requested that Calico alter the terms of the Agreement with respect to the confidentiality provisions.

26. Calico responded on October 24, 2011 disputing that the damage to the Tooling was caused by Calico, and reminding IMT that, regardless, Calico had 30 days to pay the invoice. Calico further indicated it was under no duty to alter the terms of the Agreement. At this time, Calico asked when it would receive the Tooling back. Calico needed to continue production of the 70mm Caps because its customers had ordered several hundred thousand unit for sales totaling over $120,000 due in the fourth quarter of 2011.

27. In an email dated October 24, 2011, IMT stated that "the mold should be closed up by Sunday," referring to the repair of leaks in the Tooling. IMT further requested Calico submit its rebuttal to IMT's claims that Calico had damaged the Tooling, and that IMT would consider such rebuttal.

28. On October 25, 2011, Calico responded to each of IMT's claims regarding the damage to the Tooling, and again asked when the Tooling would be returned to Calico. Calico

further reminded IMT of the harm that was being caused to Calico and its customers as a result of Calico not having the Tooling.

29. IMT responded six hours later that it was "currently workng [sic] on getting seals for the damaged cylinder, updates to follow."

30. On October 26, 2011, IMT first indicated it would not return the Tooling to Calico. IMT suggested that it would instead be willing to discuss providing the same product Calico had previously made with the Tooling to Calico based on the specifications and drawings IMT had previously received from Polytec. The inference was that IMT would allow a competitor of Calico's to use the Tooling in order to produce the 70mm Caps, and then Calico could buy those 70mm Caps from IMT.

31. On October 26, 2011, Calico responded that despite disagreeing with the charges, it would pay the invoice. Calico further suggested that it would consider a "surrogate manufacturing site" where the Tooling could be used, so that IMT would be able to more closely monitor its use. As a final alternative, Calico offered to purchase the Tooling outright.

32. On October 28, 2011, IMT ignored Calico's offers but responded and instead described in further detail proposed terms for Calico to purchase the 70mm Caps from IMT, including pricing terms which were based off of confidential information Calico had previously communicated to IMT.

33. Calico had previously shared with IMT machine specifications which would allow for the production of the 70mm Caps at a specific price. On information and belief, these machine specifications are now being used by IMT, and shared with other vendors, to determine pricing at which Calico could buy the 70mm Caps _from_ IMT, or another vendor.

34. Calico responded several hours later—again suggesting it would pay the invoice, and offering $110,000 for purchase of the Tooling outright. Calico further requested that IMT respond regarding the return of the Tooling by noon on October 29, 2011, otherwise it would consider IMT to have effectively terminated the Agreement.

35. To date, Calico has not received any further correspondence from IMT.

36. On information and belief, IMT currently has the Tooling in its possession and is shopping it around for potential use by Calico's competitors.

37. Without the Tooling, Calico is unable to make or supply the 70mm Caps.

38. Polytec and KLW Plastics had a supply agreement ("KLW Agreement"), which contained a detailed pricing schedule, signed on February 2, 2010, and transferred to Calico in May of 2011.

39. IMT was aware of the KLW Agreement when it was initially entered into by Polytec. Further, IMT was aware that the 70mm Cap Business Agreement was entered into for the purpose of using the Tooling to service KLW's needs.

40. KLW was to be Calico's first customer in the injection molded closure system market, with many other customers having expressed interest in the products—which are caps or other closure systems for industrial containers. The market is not a custom-driven market, but rather one where the 70mm Caps would be an ideal product for any company which needs to seal its containers. The potential in the market was therefore significant for Calico.

41. Due to not having the Tooling, Calico currently has outstanding purchase orders from KLW in the amount of 400,000 units, which typically sell at 35-45 cents per unit. As a result, KLW has sought 70mm Caps from Calico's competitors, damaging Calico's reputation and hard-earned goodwill.

## **COUNT I—BREACH OF CONTRACT**

42. Calico repeats and realleges the allegations of Paragraphs 1-40 as if fully set forth herein.

43. The 70mm Cap Business Agreement is a valid and binding agreement between Calico and IMT.

44. IMT has at all times relevant hereto performed its responsibilities under the Agreement.

45. The Agreement created a bailment, under Section 8, whereby Calico agreed to transfer or deliver to IMT the Tooling for any repairs, including Mandatory Maintenance. In the Agreement, IMT agreed to accept the Tooling for that purpose.

46. On October 14, 2011 Calico delivered the Tooling to bailee, IMT, which accepted the exclusive possession of the Tooling for the specified purpose of repairing the Tooling.

47. IMT breached the Agreement by refusing to return the Tooling to Calico in breach of the bailee/bailor relationship created by the Agreement.

48. On information and belief, IMT further breached the confidentiality and non-compete clauses of the Agreement in disclosing specifications and other confidential information to other potential manufacturers with whom IMT is seeking to partner in the production of the 70mm Caps, or similar products.

49. Calico has been injured by the breaches, in that: (1) it is unable to fulfill its purchase orders to KLW; (2) it cannot manufacture products for potential new customers and is therefore losing those potential customers; and (3) its competitors in the industry are able to access confidential information and use that information to obtain business at Calico's expense.

WHEREFORE, Calico respectfully requests:

(A) that the Court (1) enjoin IMT from utilizing the Tooling in order to manufacture the 70mm Caps, or products similar thereto, solely or in conjunction with any other manufacturer, and (2) direct IMT to return the Tooling to Calico and abide by the terms of the Agreement;

(B) that the Court award it damages in an amount to be determined at trial, plus interest, fees, costs and such other relief as the Court finds just and equitable.

## COUNT II—
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

50. Calico repeats and realleges the allegations of Paragraphs 1-41 as if fully set forth herein.

51. Under the KLW Agreement, Calico had a reasonable expectancy of a valid business relationship with KLW.

52. At all times relevant hereto, IMT was aware of Calico's prospective business relationship with KLW.

53. By wrongfully refusing to return the Tooling, IMT has intentionally interfered with Calico's business relationship with KLW, such that KLW has sought supply of 70mm Caps from Calico's competitors.

54. Calico has been damaged by this loss of business.

WHEREFORE, Calico respectfully requests:

(A) that the Court (1) enjoin IMT from utilizing the Tooling in order to manufacture the 70mm Caps, or products similar thereto, solely or in conjunction with any other manufacturer, and (2) direct IMT to return the Tooling to Calico and abide by the terms of the Agreement;

(B) that the Court award Calico damages in an amount to be determined at trial, plus interest fees, costs and such other relief as the Court finds just and equitable.

### COUNT III—MISAPPROPRIATION OF TRADE SECRETS/ VIOLATION OF ILLINOIS TRADE SECRETS ACT 765 I.L.C.S. 1065/1 et seq.

55. Calico repeats and realleges the allegations of Paragraphs 1-41 as if fully set forth herein.

56. Under the Agreement, IMT has agreed that information shared between the parties is proprietary. Calico communicated to IMT the confidential mold and manufacturing specifications it used to set the 70mm Cap pricing. The KLW Agreement, which was given to IMT, contained a pricing schedule which was based off of the confidential machine specifications necessary to meet the stated pricing. The pricing information is therefore considered a "trade secret" under the Illinois Trade Secrets Act and under the common law of Illinois.

57. IMT is using in its business, and sharing with potential vendors, the confidential and proprietary machine specifications in order to competitively price the 70mm Caps, to the detriment of Calico.

WHEREFORE, Calico respectfully requests:

(A) the Court enjoin IMT from disclosing or otherwise using the confidential information provided by Calico;

(B) that the Court award it damages in an amount to be determined at trial, plus interest, fees, costs and such other relief as the Court finds just and equitable.

### COUNT IV—CONVERSION
### (pled in the alternative)

58. Under the Agreement and in accordance with the parties' business relationship, Calico has an immediate, absolute, and unconditional right to possess the Tooling.

59. Through various correspondence sent to IMT between October 23, 2011 and October 31, 2011, Calico has made several demands for return of the Tooling.

60. IMT refuses to return the Tooling, and, without authorization, is currently in control and dominion of the Tooling.

61. Calico continues to be damaged by IMT's failure to return the Tooling.

WHEREFORE, Calico respectfully requests:

(A) that the Court (1) enjoin IMT from utilizing the Tooling in order to manufacture the 70mm Caps, or products similar thereto, solely or in conjunction with any other manufacturer, and (2) direct IMT to return the Tooling to Calico and abide by the terms of the Agreement;

(B) that the Court award Calico damages in an amount to be determined at trial, plus interest fees, costs and such other relief as the Court finds just and equitable.

## COUNT V—UNJUST ENRICHMENT
### (pled in the alternative)

62. IMT has been enriched by the retention of the Tooling for its own use, or use in connection with another manufacturer, to produce the 70mm Caps.

63. IMT's unjustified retention of the Tooling prevents Calico from fully operating its business, and supplying the 70mm Caps to Calico's customers.

64. As a result, IMT's unjustified retention violates the fundamental principles of justice, equity, and good conscience, and there is no adequate remedy at law. Calico is therefore entitled to just compensation under the common law of the State of Illinois.

WHEREFORE, Calico respectfully requests:

(A) that the Court (1) enjoin IMT from utilizing the Tooling in order to manufacture the 70mm Caps, or products similar thereto, solely or in conjunction with any other manufacturer, and (2) direct IMT to return the Tooling to Calico and abide by the terms of the Agreement;

(B) that the Court award Calico damages in an amount to be determined at trial, plus interest fees, costs and such other relief as the Court finds just and equitable.

## **REQUEST FOR JURY TRIAL**

Calico requests that all issues triable by jury, be so tried in this case.

Dated: November 2, 2011

Respectfully submitted,
BAKER & DANIELS LLP

By: /s/Colby A. Kingsbury
Colby A. Kingsbury, No. 6272842
Katharine E. Heitman, No. 6301715
BAKER & DANIELS LLP
311 South Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: 312.212.6500
Facsimile: 312.212.6501
Email: colby.kingsbury@bakerd.com
Email: kate.heitman@bakerd.com

*Attorneys for Plaintiff*
*Calico Precision Molding, LLC.*